UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

    Plaintiff,

  vs.        REPORT AND RECOMMENDATION

Willie Tabu Woodfork,
a/k/a Willie T. Woodford,

    Defendant.   Crim. No. 05-280 (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motions of the Defendant to Suppress Evidence from a Search, and to Suppress Statements.

A Hearing on the Motions was conducted on September 19, 2005, at which time, the Defendant appeared personally, and by Craig S. Hunter, Esq., and the Government appeared by Thomas M. Hollenhorst, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motions to Suppress be denied.

II. Factual Background

The Defendant has been charged with one Count of conspiracy to distribute and possess with intent to distribute cocaine base, in violation of Title 21 U.S.C. §§841(a)(1) and (b)(1)(A), and 846; nine Counts of distribution of cocaine base, in violation of Title 21 U.S.C. §§841(a)(1), and (b)(1)(C); and one Count of being a felon in possession of a firearm, in violation of Title 18 U.S.C. §§922(g)(1), and 924(a)(2). The events which gave rise to the pending charges are alleged to have occurred on various dates between October 28, 2004, and February 17, 2005, in this State and District.

The Defendant has moved to Suppress evidence obtained during the execution of a Search Warrant at the Defendant's residence on February 17, 2005, as well as statements that were adduced from the Defendant, by officers from the Duluth Police Department, following the execution of the Warrant. No testimony was adduced at the Hearing on the Defendant's Motions, and therefore, we limit our consideration to the "four corners" of the Search Warrant and Supporting Affidavit, since the Defendant has solely urged the suppression of his Statements as the "fruit of the poisonous tree, " Wong Sun v. United States, 371 U.S. 471, 484-88 (1963), as having been tainted by the assertedly unlawful search.

- 2 -

III.  <u>Discussion</u>

A.     <u>The Defendant's Motion to Suppress Evidence from Search</u>.

1.     <u>Standard of Review</u>.  In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); <u>United States v. Johnson</u>, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place.  <u>United States v. Gladney</u>, 48 F.3d 309, 313 (8th Cir. 1995); <u>United States v. Tagbering</u>, 985 F.2d 946, 949 (8th Cir. 1993).  For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983); see also, <u>Ornelas v. United States</u>, supra at 695.

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'"   United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodman, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999).   In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis.  United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).  Moreover, the reviewing Court must not engage in a de novo review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant.  United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991).  This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants. Illinois v. Gates, supra at 236.

b.   Legal Analysis. The Defendant has asked us to review the Search Warrant, which was executed on February 17, 2005, at the Defendant's residence at 312 East Sixth Street, in Duluth, Minnesota, in order to determine

whether the Warrant was supported by probable cause, or contained any other facial defects.   The Search Warrant authorized a search for controlled substances; paraphernalia related to the use distribution of crack cocaine; books and records, which pertain to narcotics transactions and the concealment or expenditures of monies; United States currency, and other items which may constitute proceeds from sale of controlled substances; items which show occupancy of the searched residence; and items which depicted drug related activities.   The Search Warrant also authorized a search of the Defendant's person, the persons of Michael Delton ("Delton") and Leonardo Reginald Debruce ("Debruce"), and a vehicle described as a white Ford Explorer bearing Minnesota licence plates numbered "LTR 897".

In support of the Search Warrant Application, Jeffery W. Kazel ("Kazel"), who is an Officer for the Special Investigations Unit of the Duluth Police Department ("SIU"), submitted an Affidavit which detailed events which caused him to suspect evidence of criminal activity at the Defendant's residence.   According to the Affidavit, in March of 2004, Officer Lukvsky of the Duluth Police Department reported that an individual named Willie Woodfork, with the alias  "Crazy," was selling narcotics with a second individual, identified as "Strong," and that Woodfork was living at the residence located at 119 East Fourth Street in Duluth.   In August of 2004, a

Confidential Informant ("CI") advised Investigator Wilson ("Wilson") of the SIU, that a black male from Chicago, whose name was Bernard Gantz ("Gantz"), was involved in the sale of crack cocaine, and provided Wilson with a telephone number for Gantz's cellular phone.  Kazel averred that the CI had given reliable information in the past, which had provided probable cause for a Search Warrant that yielded a felony amount of narcotics, and which had resulted in two felony narcotics arrests.

In October of 2004, the CI advised Kazel that Gantz lived at 119 East Fourth Street in Duluth, and that Gantz had crack cocaine for sale.  Kazel and the CI placed a recorded telephone call to Gantz, at the telephone number that had previously been provided to Wilson, and a meeting was arranged for the CI to purchase crack cocaine from Gantz.  At the meeting, which was recorded on both video and audiotape, the CI purchased 1.4 grams of crack cocaine from Gantz.  Gantz was observed driving a white Ford Explorer, with Minnesota license plates numbered "LTR 897," to and from the transaction.  Following that transaction, Gantz was observed entering the front door of the residence located at 119 East Fourth Street in Duluth.

Following the controlled drug transaction, Kazel ran a check on Minnesota license plate number "LTR 897," using the Minnesota Department of Motor Vehicle web site, which disclosed that a white 1991 Ford Explorer was registered to the

Defendant.   Subsequently, Kazel obtained a driver's license photograph of the Defendant, which he then presented to the CI, without any label, or other identifying features.  The CI identified the Defendant as Gantz, and advised Kazel that the person in the photograph was the person from whom he had purchased the crack cocaine during the controlled buy.

In November of 2004, the CI again disclosed to Kazel that the Defendant had crack cocaine for sale.  Two controlled buys were arranged by the CI, during which he purchased a total of 2.2 grams of crack cocaine from the Defendant, and a second unknown black male.  Prior to the second controlled buy, an Investigator from the SIU observed the Defendant, and the second individual, drive to the residence located at 119 East Fourth Street, in the previously described Ford Explorer.  The two men entered the residence, where they remained for approximately five (5) minutes before they were observed leaving the residence, in order to complete the second drug transaction with the CI.

In December of 2004, the CI advised Kazel that an individual identified as "Spook" was selling crack from the residence located at 119 East Fourth Street.  When presented with a photograph of the Defendant, without any identifying information, the CI advised that the person in the photograph was "Spook."  Kazel and the CI

arranged for a controlled buy of 2.5 grams of crack cocaine from the Defendant, and another black male, who was known to the CI as "Maverick." The Defendant and "Maverick" arrived at the agreed upon meeting place, in the previously described white Ford Explorer, at which time, the CI observed approximately 10.5 grams of crack cocaine in the possession of "Maverick." Later, the CI identified "Maverick" as Delton, after observing an unlabeled photograph of Delton that was provided to him by Kazel.

Also in December of 2004, the CI again disclosed to Kazel that the Defendant was again selling crack cocaine. Wilson, along with the CI, arranged a controlled drug transaction, at which the CI purchased 2.2 grams of crack cocaine from the Defendant, Delton, and an individual with the alias of "G-Ride," who had arrived together, at the transaction in the white Ford Explorer.

The CI, along with Wilson and Kazel, arranged four other controlled drug transactions with the Defendant in December of 2004, during which, the CI received 1.13, 2.5, 2.1, and 1.4 grams of crack cocaine, respectively. One of these transactions occurred inside of the residence located at 119 East Fourth Street, two were conducted in public locations, and the last was conducted inside of the residence located at 312 East Sixth Street in Duluth. Kazel averred that, in December of 2004, the CI had

advised that the Defendant moved from his previous residence at 119 East Fourth Street, to a new residence at 312 East Sixth Street in Duluth -- a representation that was corroborated by Kazel, who had observed the white Ford Explorer parked behind the residence located at 312 East Sixth Street.  A public records check, which was conducted via the internet, also disclosed that 312 East Sixth Street was the newly listed address for Diesha Sintral Robinson ("Robinson"), who is identified as the Defendant's girlfriend, and who had previously lived with the Defendant at 119 East Fourth Street.  The CI identified Robinson from an unlabelled driver's license photograph that had been presented to him.

In January of 2005, the CI and Wilson arranged a controlled buy of crack cocaine from the Defendant and Debruce, who drove together to the transaction in the white Ford Explorer.  Subsequently, Wilson presented the CI with an unlabelled photograph of Debruce.  The CI positively identified Debruce as the individual from whom he had purchased crack cocaine, and who was known as "Psycho Capone."

Kazel further attested that the CI had engaged in a controlled buy of approximately 1.5 grams of crack cocaine from the Defendant, in the residence at 312 East Sixth Street, within seventy-two (72) hours before the Application for the Search

Warrant was made.  He also averred that Debruce and Delton were present during that transaction.

On this showing, we find that there was ample probable cause to support the issuance of the Search Warrant.   At the outset, we recognize that much of the information, which is contained in the Affidavit, was supplied by the CI.   When probable cause for an arrest is based upon information provided by an informant, "'a key issue is whether that information is reliable.'"   United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); see also, United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause.").   As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations:  a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'"   Id., citing United States v. Anderson, 933 F.2d 612, 615 (8th Cir. 1991).

Consequently, the "core question" is whether the information provided by the informant was reliable.   See United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.").   Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998).   In turn, an informant is deemed reliable when his/her statements are corroborated by independent evidence.   See United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003)("[C]orroboration of minor, innocent details may support finding of probable cause."), citing United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see also, United States v. Koons, supra at 993 ("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham, supra at 401; United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998)("[C]orroboration of the confidential

informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, we find that Kazel reasonably relied upon the information provided by the CI, not only because the CI had proven to be reliable in the past, but also because the information was corroborated by the arrangement, and conduct, of the controlled drug purchases from the Defendant, some of which occurred at either his past or current residence. See United States v. Pennington, 287 F.3d 739, 742 (8th Cir. 2002) ("[B]y arranging and monitoring a controlled buy at [the defendant's] farm, the officers reliably corroborated the CI's information that [the defendant] was manufacturing and distributing methamphetamine at that location.").

Therefore, we find that the CI's information was reliable, and was corroborated, and that the Search Warrant which issued was supported by more than sufficient probable cause to believe that crack cocaine, and other evidence related to the distribution of crack cocaine, would be present in the Defendant's residence. Moreover, considering Kazel's averment, that the CI had purchased crack cocaine from the Defendant at his residence, within seventy-two (72) hours from the time that the Search Warrant Application was presented to the issuing Judge, we also find that the information was sufficiently fresh to support a finding of probable cause that

narcotics, as well as materials related to the use and distribution of narcotics, were being stored inside of the Defendant's residence. See <u>United States v. Martin</u>, 511 F.2d 148, 151 (8th Cir. 1975)(Application for Search Warrant was not stale where drug sales occurred within residence to be searched within three (3) days before the Warrant's issuance and, in any event, a protracted history of drug trafficking was demonstrated by the Application).

Therefore, since we find that the Search Warrant was adequately supported by probable cause, and was not otherwise facially defective, we recommend that the Defendant's Motion to Suppress Evidence from the Search be denied.

      B.    <u>The Defendant's Motion to Suppress Statements</u>.

As noted, at the Suppression Hearing, the Defendant advised that his Motion to Suppress Statements is predicated solely upon the his assertion that the statements were the tainted fruits of the search which, he contended, was unlawful. Since we have found no constitutional defect in the warranted search of the Defendant's residence, we further recommend that the Defendant's Motion to Suppress Statements be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.    That the Defendant's Motion to Suppress Evidence From Search [Docket Nos. 14] be denied.

2.    That the Defendant's Motion to Suppress Statements [Docket No. 15] be denied.

Dated: September 27, 2005                    s/Raymond L. Erickson
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 13, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than October 13, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.